UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN TORDINI,**<br>*Individually and Derivatively*<br>*On behalf of Our Turn LLC*<br><br>                      Plaintiff,<br><br>           v.<br><br>**ROBERT N. COYLE, et.al.,**<br><br>                      Defendants. | C.A. No. 02-2653<br><br>**JURY TRIAL DEMANDED** |

## O R D E R

**AND NOW,** this ____ day of June 2002, upon consideration of the Motion to Quash Plaintiff's Subpoenas for Documents, and Plaintiff's Opposition thereto, it is hereby **ORDERED, ADJUDGED** and **DECREED** that the Motion to Quash is **DENIED.**

**IT IS FURTHER ORDERED** that the Defendants are prohibited from any further obstruction of discovery from third parties, including *ex parte* contact with third party witnesses regarding their obligations pursuant to subpoena, unless otherwise ordered by this Court.

                                                                             _____
                                                                               KATZ, S. J.
                                                                               UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN TORDINI,<br>*Individually and Derivatively*<br>*On behalf of Our Turn LLC*<br><br>       **Plaintiff,**<br><br>  v.<br><br>**ROBERT N. COYLE, et.al.**<br><br>       **Defendants** | C.A. No. 02-2653<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S OPPOSITION TO THE MOTION TO QUASH DOCUMENT
SUBPOENAS TO THIRD PARTY BANKS**

  This Court has twice ordered discovery in this case to be completed by July 31, 2002. See May 6, 2002 and May 28, 2002 Orders. Impeding the progress of this case, the moving Defendants have unilaterally stopped third party banks from producing subpoenaed records.[1] The moving Defendants fail to articulate a legally cognizable basis or the requisite good cause necessary to quash subpoenas for documents from third parties, or to otherwise stop discovery. This case must move forward with the noticed discovery, and the motion to quash denied.

  On May 13, 2002, Plaintiff issued subpoenas to the third party banks identified in the Complaint for records relating to the financial representations of <u>each moving</u>

---

[1] The moving Defendants are identified in the Complaint as the Coyle Family Defendants and their alter ego shell companies. See Complaint, Introductory Statement, pp. 3, 4. The same law firm represents all of the moving Defendants.

mak: 52101.1

<u>Defendant</u> since January 1, 1999.[2]  The subpoenas commanded the records be produced on May 30, 2002.  Most of the subpoenaed parties did not produce records, advising Plaintiff that the moving Defendants' counsel represented to them that they *would* be filing a motion to quash[3].  <u>See</u> May 30, 2002 letter of Mark A. Kearney, Affidavit of Roger J. Harrington, Jr., and May 24, 2002 letter from Attorney Hunt to Sterling Bank, attached hereto as Exhibits "A", "B" and "C".  On May 28, 2002 (less than two days before the return date on the subpoena), the moving Defendants filed a motion to quash, and based on the moving Defendants' representations to them, most of the subpoenaed parties have not complied with the subpoenas to date.[4]

The subpoenaed records are discoverable, and the moving Defendants cite no caselaw, and articulate no legal or factual basis, to quash the validly issued subpoenas.  Accordingly, the motion to quash must be denied, and the moving Defendants prohibited from any further interference with subpoenas.

A. **<u>Background Relating to the Motion</u>**

This case presents a snapshot of a classic Ponzi scheme based on multiple pieces of residential real estate.  As specifically pled in this case, and is true in similar cases, the scheme works for a while when, with the direction of a sophisticated financial advisor or accountant, the Defendants create multiple related companies owned by the same family which fraudulently induce loans from smaller banks based on false financial statements, phony insider appraisals and title insurance; then, when the banks are looking for current

---

[2] Each of the subpoenas are attached to the motion to quash at Exhibit "C", and are incorporated herein.

[3] Either not aware of, or otherwise properly disregarding, the moving Defendants' *ex parte* representations, limited documents have been received from two banks, which were copied and sent to Defendants.

[4] Contrary to Local Rule 26.1(f), Defendants' counsel never communicated to Plaintiff's counsel concerning any aspect of these subpoenas, but instead filed their motion less than two (2) days before the documents were to be produced.

2

payment, the Defendants need to find a new source of funds to keep all the banks current until "enough" of the fraudulently induced loan proceeds can be secretly hidden away in a trust fund or other non-borrower; then, when "enough" funds are hidden away, all of the alter ego companies will collapse, the assets supporting the loan guarantees will be worthless, the properties will be sold at their true value, the banks and investors will lose, and the trust fund and its principals will be enriched by millions of dollars in fraudulently induced loans, and transfers of funds from related companies.[5]

Derivative Plaintiff Our Turn is just the latest victim of this ongoing scheme created by the Coyle Family Defendants and their financial advisor Defendant Bruce Bryen, CPA. Our Turn was a profitable title insurance company due, in some part, to the efforts of Plaintiff John Tordini as its former executive officer until September 14, 2001, when a couple of the moving Defendants fired him. Plaintiff John Tordini, the first non-Coyle family member to obtain an ownership interest in any of the Coyle alter ego shell companies, commenced this action only after an investigation discovered that Our Turn was being abused to fuel the Ponzi scheme through "administrative" and "management" fees to the alter ego shell companies, while the fraudulently induced loan proceeds were transferred to non-borrower Robert N. Coyle, Sr. and other Coyle Family Defendants, including Defendant Coyle Family Irrevocable Trust.[6] True to the standard in Ponzi schemes, Our Turn is being left as a failed company owing hundreds of thousands of dollars to its lender, First Republic Bank, and Plaintiff's investment will be worthless.

---

[5] As Defendant Robert N. Coyle, Sr. admitted to the Plaintiff, the purpose of his businesses is for his family to get "very, very rich" and have "f --- you money", i.e., "enough" money to ignore any demand for payment or withstand any scrutiny of their misconduct.

[6] As just one of many examples supplementing the graph on page 29 of the Complaint, in 2000, Defendant Robert N. Coyle, Sr. received $712,801 in cash "distributions" from Defendant Nine LLC, when his capital account in Nine LLC was $57.

As specifically plead, the core of the Defendants' misconduct is fraudulent financial misrepresentations to Plaintiff and the banks whose fraudulently induced loans begin the Ponzi scheme.  See Complaint, ¶¶ 2-30.  This pled fraudulent financial misconduct is the basis for the Defendants' abusive destruction of Our Turn, in which Plaintiff Tordini has a passive minority ownership interest. See Complaint, ¶¶ 69-86. Accordingly, the fraudulent appraisals, financial statements and ownership misrepresentations submitted to the lenders by each of the moving Defendants are central issues at trial.

Devoid of legal authority, the moving Defendants must now desperately cover-up any scrutiny of the complete scheme.  To desperately avoid any such scrutiny, the moving Defendants summarily argue that the subpoenas seek information not relevant to this case, and that discovery should be stayed while this Court reviews their flawed May 30, 2002 motion to dismiss, and Plaintiff's Opposition thereto.  Alternatively, the moving Defendants seek to limit discovery on the basis of a state court employment claim and seek a confidentiality order, although they present no "specific examples or articulated reasoning" establishing good cause for their requested relief. See Glenmede Trust Co. v. Thompson, 56 F.3d 476, 484 (3d Cir. 1995)(*quoting* Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994)).

These delay-oriented arguments are without merit. As plead, time is of the essence, and exigent relief in accordance with this Court's scheduling Order is necessary. The motion to quash must be denied, the subpoenaed documents produced, and Defendants must be prohibited from interfering with third parties' production of subpoenaed records.

B.  **The Subpoenas Seek the Production of Discoverable Documents**

On May 13, 2002, Plaintiff issued valid subpoenas for records from the banks identified in the Complaint, and which received fraudulent financial statements from the moving Defendants, and loaned millions of dollars to the moving Defendants, creating the scheme that has now enveloped, and is destroying, Our Turn on an ongoing basis. See Complaint ¶¶69-74.

The moving Defendants do not articulate any specific reason to quash the instant subpoenas, other than the Court of Common Pleas, in a case relating to Lori Blee-Gonzalez' and John Tordini's employment dispute with Our Turn, has limited the scope of discovery in that case to, inter alia, transactions with Our Turn, or for which Our Turn is liable.[7]  The instant case, however, involves different parties, different claims, and different remedies arising from the destruction of Our Turn as the latest victim in this well plead scheme.  This case is brought solely by the passive minority owner of Our Turn seeking to recover for the fraudulent inducement of his purchase of securities in Our Turn, and then followed by the systematic premeditated destruction of Our Turn by the Defendants' need to fund the ongoing Ponzi scheme, and secretly transfer millions of dollars of fraudulently induced loans into the Defendants Coyle Family Irrevocable Trust and RNC Investments.

The scope of relevance in the state court employment case has no affect on this Court's review of this securities fraud and derivative case by Our Turn against the

---

[7] The moving Defendants argue that these subpoenas should be quashed because they are not relevant in the context of the state court employment case filed by Plaintiff John Tordini and a former bookkeeper, Lori-Blee Gonzalez, against Our Turn, and Defendants Robert Coyle, Sr. and RNC Investments, LLC.  The state court case, as is clear on its face, is an employment case in which Lori Blee-Gonzalez and John Tordini are seeking to enforce their rights as former employees of Our Turn.  See Amended Complaint in Tordini et al. v. Coyle et al., CCP Phila., Sept. Term 2001, No. 2817 (attached to Motion to Quash as Exhibit "A").

5

Defendants who are destroying Our Turn's value on an ongoing basis. The state court is examining different, employment-related, issues. Moreover, contrary to the moving Defendants' misrepresentation in Paragraph 11 of their instant motion to quash, Plaintiffs in the state court subpoenaed only First Republic Bank – the lender to Our Turn. In the state court, Plaintiffs never attempted to subpoena any other bank, and no court has ever prohibited them from doing so.

In sharp contrast, the instant case for securities fraud[8], and brought derivatively on behalf of Our Turn, seeks damages, and equitable relief, arising from a pattern of fraudulent and fiduciary misconduct through a financial scheme funded by millions of dollars in fraudulently induced loans from the subpoenaed banks, which are now being supported by Our Turn, and thus destroying its value.

Here, the discovery of financial misconduct forming the basis of the scheme destroying Our Turn is central to the Plaintiff's case. Here, the production of the banks' records will expose, inter alia, that the Defendants: fraudulently induced loans based on the false financial statements of each of the alter ego shell companies that serve as the basis for the financial statements of Defendants Robert and Carol Coyle, guarantors of the Our Turn loan; are transferring loan proceeds and properties to non-borrowers to continually conceal their failing Ponzi scheme, while Our Turn funds the Ponzi scheme by paying "fees" to support the mortgage payments on fraudulently appraised properties; submitted grossly inflated and false appraisals which form the basis for the loans and the phony valuations of each alter ego shell company's worth; are aware of the extent of the defaults with each bank, including the failure to pay real estate taxes on each property,

---

[8] It is beyond dispute that the state court would not have jurisdiction over Plaintiff Tordini's securities fraud claims. See Riley v. Simmons, 45 F.3d 764, 770 (3d Cir. 1995).

which, pursuant to the cross-default and cross-collateralization provisions with each bank, requires the Defendants to abuse Our Turn to fund their ongoing Ponzi scheme; engage in the ongoing practice of secretly transferring properties among the alter ego shell companies, and "related" parties[9], without disclosure to the lenders; and, engage in the ongoing practice of providing one property as a first lien to two different lenders to induce loans to further fuel their scheme.  See e.g. Complaint, ¶¶ 1-31.

The moving Defendants have not, and cannot, meet their burden of showing a "particular need" for this extraordinary relief.  Great West Life Assurance Co. v. Levithan, 152 F.R.D. 494 (E.D.Pa. 1994)(*citing* Trans Pacific Insurance Co. v. Trans-Pacific Insurance Co., 136 F.R.D. 385, 391 (E.D.Pa. 1991)).  Accordingly, the validly issued subpoenas seek the production of documents that are relevant to every claim in this matter, and this discovery is reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ. P. 26 (b)(1); Great West Life Assurance Company, at 497; Rorer International Cosmetics Ltd. v. Halpern, 85 F.R.D. 43 (E.D.Pa. 1979).

C.  **A Motion to Dismiss Does Not Stay Discovery**

Without citation to caselaw, the moving Defendants seek to quash the validly issued subpoenas for records by imploring the Court to "stay" the pending subpoenas until it rules on a motion to dismiss.  This request lacks any legal merit, as the moving Defendants concede, as they must, that the existence of a pending motion does not stay discovery in this context.

This Court has already rejected the Defendants' attempt to delay and "stay" this litigation in denying the Defendants' cross-motion for an extended discovery period. See

---

[9] For example, to avoid transfer taxes, the moving Defendants secretly transfer mortgaged properties to a "Luis Lopez" and a "Carmen Diaz", and represent them as family members residing at the moving Defendants' office.

7

May 28, 2002 Order. This case must move forward. Plaintiff is moving forward, having made his mandatory disclosures, and issued document requests and interrogatories to all Defendants.[10]

### D. Defendants Do Not Articulate Any Basis for a Protective Order

Alternatively, the moving Defendants seek to rewrite the Complaint and transform this well pled derivative breach of fiduciary duty and securities fraud case into the state court employment dispute. This alternative request must also be denied, as the moving Defendants do not, and cannot, articulate the specific harm in the issuance of these subpoenas.

The moving Defendants summarily argue that this Court is somehow restricted to the scope of discovery in the state court employment case brought by Lori Blee-Gonzalez and John Tordini. As demonstrated, *supra*, the instant case is a derivative case for fraudulent and fiduciary misconduct, along with a securities fraud claim. This case does not involve claims for compensation for wages by Lori-Blee Gonzalez and John Tordini.

Further, there is no basis for this Court to override the strong public interest in an open courtroom, and to cloak these records as confidential. The moving Defendants have not articulated a "clearly defined and serious injury" that is "shown with specificity" necessary for a confidentiality order. Pansy, at 787. The moving Defendants have not

---

[10] Plaintiff will timely oppose the motion to dismiss, but, by way of preview, it is difficult to conceive of an argument to dismiss this derivative and securities fraud case. The moving Defendants seek the dismissal of the securities fraud claims based solely on a theory that limited liability company interests are not securities, a conclusion rejected by several federal courts, the Pennsylvania General Assembly, and, in any event, requires a factual analysis not available until discovery into the nature of this security. For example, Defendant Robert N. Coyle, Sr. has repeatedly admitted that he controlled Our Turn, and every aspect of Our Turn. There is no dispute that Plaintiff John Tordini has not been involved in any aspect of Our Turn since September 14, 2001, and that he never controlled the financial aspects of Our Turn. There are many other examples of factual disputes concerning control of Our Turn, and the passive nature of Plaintiff's investment in Our Turn, which require a fact finder to resolve, and which will be fully addressed in response to the motion to dismiss.

8

even attempted to claim such harm. Even assuming, *arguendo,* that they could articulate a harm relating to their banking relationships, "[f]ederal courts should not provide a shield to potential claims by entering broad protective orders that prevent public disclosure of relevant information. The sharing of information among current and potential litigants is furthered by open proceedings." <u>Glenmede Trust Company</u>, at 485. Here, the information relating to misrepresentations to several banks, affecting the title, value and insurability of properties which are the alleged assets supporting millions of dollars in loans by federally insured banks, is heavily vested with the public interest. Absent some other form of a clearly defined and serious injury, the strong public interest in open proceedings requires denial of any request for confidentiality.

### E. Conclusion

For all the foregoing reasons, Plaintiff respectfully submits that the motion to quash must be denied, and Defendants prohibited from any further *ex parte* contact with third party witnesses regarding their obligations to produce records pursuant to subpoena, unless otherwise ordered by this Court.

OF COUNSEL:
ELLIOTT REIHNER SIEDZIKOWSKI
  & EGAN, P.C.

/s/ Mark A. Kearney
JOHN M. ELLIOTT
MARK A. KEARNEY
ROGER J. HARRINGTON, JR.
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
Blue Bell, PA  19422
(215) 977-1000

DATE:  May 31, 2002                    Attorneys for Plaintiff

9

## CERTIFICATE OF SERVICE

I, Mark A. Kearney, Esquire, hereby certify that on this 31th day of May 2002, I served a true and correct copy of the foregoing upon the following in the manner set forth:

**Via Facsimile and First Class Mail**

Anthony Valenti, Esquire
Cureton Caplan
950B Chester Ave.
Delran, NJ 08075

**Via Facsimile and First Class Mail**

Steven J. Jozwiak, Esquire
2201 Route 38
Suite 200
Cherry Hill, NJ   08002

/s/ Mark A. Kearney
MARK A. KEARNEY