IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN TORDINI,<br>  *Individually*<br>  *and derivatively* on behalf<br>  of Derivative Plaintiff Our Turn, LLC<br><br>        **Plaintiff,**<br>  v.<br><br>ROBERT N. COYLE, SR., et al.<br><br>        **Defendants** | C.A. No. 02-2653<br><br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION TO ENFORCE THIS COURT'S JULY 12, 2002 ORDER AND TO QUASH THE SUBPOENAS UPON HIS AGED AND INFIRMED PARENTS[1]**

This Court's July 12, 2002 Order must be enforced, and the Coyle Family Defendants' latest motion seeking this Court's reconsideration of its Orders must be denied. This Court's July 12, 2002 Order clearly and unambiguously mandated that each party shall be deposed for two (2) hours.

In accordance with this Court's May 6, May 28, June 4, July 3 and July 12, 2002 Orders, Plaintiff properly noticed the depositions of each of the Defendants for a two (2) hour period. See Exhibit "B" to Plaintiff's July 16, 2002 Motion to Enforce. The Coyle Family Defendants now violate this Court's clear order requiring each party to be deposed for no more than two hours by refusing to produce the corporate defendants for their testimony pursuant to Fed.R.Civ.P. 30(b)(6). Plaintiff timely noticed these

---

[1] In response to Plaintiff's July 16, 2002 Motion to Enforce and to Quash, the Coyle Family Defendants filed a duplicative "Response" and a Cross-Motion for an Additional Deposition and To Enforce the Subpoenas upon Plaintiffs' parents – the exact issues raised by Plaintiffs' motion and the "Response". Thus, this Reply also serves as an Opposition to the Coyle Defendants' disingenuously styled "Cross Motion".

mak: 53053.1

depositions, as each of these depositions is of a defendant who has received hundreds of thousands of dollars in illicit gain from the plead Ponzi scheme. There is no good cause for a protective order precluding a two (2) hour deposition of a Defendant.

Conversely, there is no basis to modify this Court's July 12, 2002 Order to allow the Defendants more than the court-ordered two (2) hours to depose the Plaintiff. In accordance with this Court's July 12, 2002 Order, Plaintiff appeared for his deposition on July 17, 2002 – marking the **fifth day** that he has provided testimony to the Coyle Defendants' counsel concerning the same issues in the last five months.

Further, the Coyle Defendants' transparent strategy of harassment and delay is evidenced by the Subpoenas upon Plaintiff's aged and infirmed parents, John and Ida Tordini, who have nothing whatsoever to do with this action. To further confirm the Coyle Defendants' vindictiveness, after Plaintiff's counsel advised that he objected to the subpoenas because of their age, illness and lack of any conceivable knowledge relating to this case, the Coyle Defendants directed their process server to interrupt the Plaintiff's parents at 9:00 PM on July 18, 2002, (after Plaintiff's counsel filed the instant motion to quash), by knocking on their door claiming to have "legal papers for them".    The improper subpoenas upon Plaintiff's aged and informed parents must be quashed as there has been no Offer of Proof justifying deposing them.

> A.    **The Coyle Family Defendants Have No Excuse To Violate This Court's July 12, 2002 Order Regarding the Party Depositions**
>
> > 1.    **This Court's July 12, 2002 Order Made Clear that Plaintiff is Entitled to Depose the Defendants.**

In violation of this Court's July 12, 2002 Order, the Coyle Family Defendants <u>refuse to produce any of their corporate defendants</u> for the Court ordered two (2) hour

2

deposition and, continue to not produce all of the responsive documents ordered by this Court to be produced forthwith on July 12, 2002, in response to Plaintiff's May 17, 2002 Request for Documents.[2]

Plaintiff timely and properly noticed the deposition of each Defendant.[3] Plaintiff seeks to depose each Defendant to understand its knowledge, its benefit, and its role in the Ponzi scheme which continues to destroy Our Turn, and which was not disclosed to Plaintiff[4]. This is standard core discovery.

### 2. The Coyle Family Defendants Do Not State Any Basis to Depose Plaintiff for A Sixth (6th) Time.

This Court's July 12, 2002 Order clearly directed all counsel that they could depose all parties for a maximum of two hours. The Coyle Family Defendants have deposed the only Plaintiff for two hours on July 17, 2002.

The Coyle Family Defendants fail to disclose to this Court that they have already cross-examined Plaintiff Tordini **five times already, on these same issues:** one (1) full

---

[2] A week after this Court's July 12, 2002 Order, requiring the production of all documents "forthwith", the Coyle Family Defendants produced boxes of documents relating to the real estate files for properties allegedly owned by the Coyle Family Defendants. This production responded to only one category of several in Plaintiff's May 17, 2002 request for production of documents. The Coyle Family Defendants have not produced any financial information relating to any of the aspects of this case pursuant to the Local Rules. Plaintiff requested the Coyle Family Defendants to comply with this Court's Order, and is awaiting their full production by Monday, July 22, 2002. On July 18, 2002, the Coyle Family Defendants and the Defendants Bruce Bryen and Bryen & Bryen LLP finally prepared their initial disclosure statements due six (6) weeks earlier, and in response to this Court's July 12, 2002 Order, that they be produced "forthwith."

[3] Contrary to the Coyle Family Defendants' misrepresentations, Plaintiff has always sought to depose each Defendant, and, weeks ago, set a schedule of depositions that would have allowed counsel to complete the initial depositions, and then to complete each of the corporate defendants. The Coyle Family Defendants' refusal to produce the initial witnesses resulted in Plaintiff's July 5, 2002 Motion to Compel the Coyle Family Defendants to appear for deposition. This Court's July 12, 2002 Order was clear and unambiguous that Plaintiff could depose each Defendant for a maximum of two hours.

[4] The Coyle Family Defendants mislead this Court by referring to just one example of the areas of inquiry for the corporate defendants– authenticating documents; clearly, authentication is not the only area of inquiry and Plaintiff hopes that Defendants not oppose efforts to authenticate documents outside of depositions. Each Defendant is a part of this Scheme, and Plaintiff has the right to examine that participation, benefits, and nondisclosure in discovery.

<u>day in February 2002</u> in a Pennsylvania Unemployment Compensation Hearing regarding their same defenses and counterclaims in this case; <u>three (3) full days in June 2002</u> regarding the same allegations plead in their counterclaim <u>in this case and in the state court case</u>; and, <u>two (2) hours on July 17, 2002</u> in accordance with this Court's July 12, 2002 Order.  Admitting the futility of such an interminable examination, during the July 17, 2002 deposition, most of the questions had been previously asked or inquired about during the previous four (4) full days of examination.[5]  Thus, Defendants have already had **five (5)** depositions of Plaintiff Tordini, and they have nothing else further to ask, as evidenced by their inability to identify any particular areas of inquiry remaining unanswered.

      B.    **The Coyle Family Defendants Show No Cause For Deposing John Tordini's Aged And Infirmed Parents**.

In the July 16, 2002 Motion to Enforce, Plaintiff's counsel represented to this Court, and opposing counsel beforehand, that Plaintiff Tordini's parents are aged and infirmed and have no knowledge relative to any aspect of this case.  Plaintiff has not identified them as witnesses, and they have never been identified by anyone in this case as having material knowledge of any event relating to any aspect of this case.  Two days after filing this motion, the Coyle Family Defendants served the subpoenas upon Plaintiff's 80 and 79 year old parents at 9:00 PM, by knocking on their door at home to advise that they were there "with legal papers for them".

---

[5] For example, the Coyle Family Defendants have now, on three separate occasions, asked Plaintiff about Our Turn's loan to its former bookkeeper, Lori Blee-Gonzalez.  Further, the Coyle Family Defendants have now asked Plaintiff on three (3) separate occasions, regarding his ownership interest and role in Our Turn.  Specifically, Plaintiff has confirmed on several occasions that Defendant Robert N. Coyle, Sr. controlled and managed all the affairs of Our Turn.  Our Turn was Defendant Robert N. Coyle's company, as also confirmed by all the banking records produced to date in this case.

The only connection that the Coyle Family Defendants claim between the Plaintiff's parents and their counterclaim in this case and the state court case[6], is that, for a period of time, as confirmed by all parties, Plaintiff Tordini lived with his parents for two (2) weeks <u>in 1998</u> following an argument with his wife over who was going to the grocery store for a head of lettuce.  However, there is no basis to believe that Plaintiff's parents have any knowledge relating to this event four years ago[7]; indeed, the evidence adduced by the Coyle Family Defendants is exactly to the contrary. Specifically, on July 9, 2002, Plaintiff's spouse, Susan Tordini, testified that Plaintiff's parents had no knowledge of any events concerning their relationship:

> Q. Were either of your parents involved in any way trying to help things out, smooth things over?
>
> A. No.  My side and his side never got involved.
>
> Q. What was the relationship between in-laws like?
>
> A. They were very good to me.  I just didn't get along with his mom.

Thus, as the Coyle Family Defendants' noticed witness Susan Tordini confirmed on July 9, 2002, it is undisputed that Plaintiff's parents have no knowledge relating to any of the aspects of this case other than they are Plaintiff's parents.[8]

---

[6] Tellingly, the Coyle Family Defendants attach testimony of Plaintiff and his wife Susan Tordini **from the state court case** – not discovery in this case. <u>See</u> Exhibits "B" and "C" to the Coyle Family Defendants' cross-motion.

[7] Moreover, there is no evidence relating to any relationship between the Plaintiff and Defendants in 1998.

[8] The Coyle Family Defendants claim that Plaintiff Tordini somehow concealed an unstable home life, and that this nondisclosure induced them into selling Our Turn securities to Plaintiff.  There is no evidence that Plaintiff Tordini had an unstable home life – indeed, the contrary to is true, as confirmed in both Plaintiff's and his wife's testimony.  As shown, there is no shred of evidence that leads to Plaintiff's parents.  Further, even assuming, <u>arguendo</u>, that Plaintiff and his wife were having marital difficulty, it is impossible to determine the materiality of this allegation to the Coyle Family Defendants' sale of Our Turn securities. In contrast, each of the Coyle Family Defendants are involved in the Ponzi Scheme, and have each received

It is also undisputed that Plaintiff's parents, John and Ida Tordini, suffer from severe illnesses related to their advanced ages of 80 and 79. These illnesses were detailed in the July 16, 2002 Motion to Enforce the July 12, 2002 Order, and are not disputed by the Coyle Family Defendants. These subpoenas are intended to harass and embarrass, confirmed by sending a process server to Plaintiff's parents' house at 9:00 PM on July 18, the Coyle Family Defendants frightened Plaintiff's elderly parents, who are not accustomed to knocks on the door that late in the evening. There is no legally cognizable basis for deposing Plaintiff's aged and infirm parents, and Plaintiff respectfully submits that the subpoenas must be quashed and this case properly focused for trial by completing depositions of witnesses with discoverable information in accordance with the Court's May 6, May 28, June 4, July 3 and July 12 Orders, and the Federal Rules of Civil Procedure.

          Respectfully submitted,

OF COUNSEL:
ELLIOTT REIHNER SIEDZIKOWSKI
  & EGAN, P.C.

/s/ Mark A. Kearney
JOHN M. ELLIOTT
MARK A. KEARNEY
THOMAS N. SWEENEY
ROGER J. HARRINGTON
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
P.O. Box 3010
Blue Bell, PA 19422

Dated: July 22, 2002    (215) 977-1000

---

hundreds of thousands of dollars in illegal gains from the Ponzi Scheme specifically plead in the Complaint. However, to exact some revenge in the hope that Plaintiff Tordini will waive his claims, the Coyle Family Defendants subpoenaed his parents for testimony, although they have never been listed on Plaintiff's witness list, <u>or in any document produced in this case</u>.

## CERTIFICATE OF SERVICE

I, Mark A. Kearney Esquire, hereby certify that on this 22nd day of July 2002, I served a true and correct copy of the foregoing upon the following in the manner set forth:

### VIA FACSIMILE AND FIRST CLASS MAIL

Anthony Valenti
Cureton Caplan
950B Chester Ave.
Delran, NJ 08075

Steven J. Jozwiak, Esquire
Counselor at Law
2201 Route 38
Suite 200
Cherry Hill, PA 08002

_____
MARK A. KEARNEY